# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### ***

|  |  |
|---|---|
| ALEJANDRO LOPEZ,<br><br>                    Plaintiff,<br><br>vs.<br><br>GOLDEN NUGGET CASINO,<br><br>                    Defendant. | Case No. 2:17-cv-01712-RFB-VCF<br><br>**ORDER AND**<br>**REPORT & RECOMMENDATION.**<br><br>APPLICATION TO PROCEED *IN FORMA PAUPERIS*<br>(ECF NO.1) AND COMPLAINT (ECF NO. 1-1) |

Before the Court are Lopez's application to proceed *in forma pauperis* (ECF No. 1) and complaint (ECF No. 1-1). Lopez's *in forma pauperis* application is granted. For the reasons stated below, Lopez's Claims 5, 10 and 11 should be dismissed with prejudice. Claims 1, 2 regarding the First and Fourteenth Amendments, 3, 4, 6, 9, 12 and 15 are dismissed with leave to amend. Proceedings in the remaining Claims 2 regarding the Fourth Amendment, 7, 8, 13 and 14 are stayed until further order of the Court.

## I. BACKGROUND

In Lopez's complaint, Lopez alleges that he was dining with his fiancé and a friend on December 4, 2016, at the Golden Nugget Casino ("GNLV"). (ECF No. 1-1 at 3). Lopez alleges that his friend paid for the meal. *Id*. at 4. Then, Lopez claims that he and his fiancé asked for a food container for leftovers, including for his drink, which was to be transferred from a glass cup to a plastic to-go cup. *Id*. When he made this request, Lopez alleges that security was summoned. *Id*. According to Lopez, he was not intoxicated or under the influence of drugs. *Id*. Lopez asserts that four to five security guards accosted him and his fiancé as they made their way to the exit. *Id*. The security guards allegedly told Lopez that he was prohibited from entering the GNLV again. *Id*. Lopez claims that he kept his

composure, remained fully cooperative, respectful, and posed no threat to the safety of anyone around. *Id*.

Next, Lopez alleges that before exiting GNLV, Lopez approached an ash tray and retrieved a cigarette butt.  *Id*.  Afterwards Lopez alleges GNLV security brutally assaulted him by kicking, beating, and pummeling him.  *Id*.  Following the attack, Lopez alleges that security handcuffed and detained him in a holding cell until the police arrived.  *Id*.  Lopez alleges that police then took him into custody on unrelated outstanding warrants.  *Id*. at 5.  He alleges that his resulting injuries were readily apparent to medical personnel at the city jail.  *Id*.  Lopez alleges he suffered substantial pain as a result of the injuries from this incident.  *Id*.

## II. DISCUSSION

Lopez's filings present two questions: (1) whether Lopez may proceed *in forma pauperis* under 28 U.S.C. § 1915(e); and (2) whether Lopez's complaint states a plausible claim for relief.  Each is discussed below.

### A.  *In Forma Pauperis*

Lopez's application to proceed *in forma pauperis* is granted.  § 1915(a)(1) permits a plaintiff to bring a civil action "without prepayment of fees or security thereof" if the plaintiff submits a financial affidavit that demonstrates the plaintiff's "is unable to pay such fees or give security therefor."  Under § 1915(a)(1) , Lopez submitted a financial affidavit.  (ECF No. 1).  According to the affidavit, Lopez is incarcerated and has no money or assets.  Lopez's application to proceed *in forma pauperis* is, therefore, granted.

### B.  Plausible Claim for Relief

#### a.  Legal Standard

Because the Court grants Lopez's application to proceed *in forma pauperis*, it must review Lopez's complaint to determine whether the complaint is frivolous, malicious, or fails to state a plausible claim. *See* 28 U.S.C. § 1915(e). The Court's review of Lopez's complaint is guided by two legal standards: Federal Rule of Civil Procedure 8 and the Supreme Court's decision in *Erickson v. Pardus*, 551 U.S. 89 (2007).

Fed. R. Civ. P. 8(a) provides that a complaint "that states a claim for relief must contain … a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The Supreme Court's decision in *Ashcroft v. Iqbal*, states that in order to satisfy Rule 8's requirements a complaint's allegations must cross "the line from conceivable to plausible." *See Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). The Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) and *Iqbal* prescribe a two-step procedure to determine whether a complaint's allegations cross that line.

First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *See Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," *id.* at 678, or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 681.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Id.* at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

3

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *See Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

If the Court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (citation omitted).

Lopez's claims arise from his arrest in Las Vegas, Nevada. Lopez alleges several claims against GNLV and unknown GNLV security and personnel:

### 1. Claim 1

Lopez alleges GNLV violated his First, Fourth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1981 (a). Under § 1981 (a), every person within the United States has the same right to "make and enforce contracts, to sue, be parties, give evidence and to the full and equal benefit of all laws" "as is enjoyed by white citizens and shall be subject to like punishment, pains, penalties, taxes." 42 U.S.C. § 1981. Based on the facts in the complaint Lopez does not state how GNLV violated 42 U.S.C. § 1981 or how he was denied equal benefit of the law based on his race. Lopez does not allege any facts concerning his race in the complaint. Therefore, this claim is dismissed with leave to amend.

### 2. Claim 2

Lopez alleges GNLV violated his First, Fourth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. Under § 1983, any person who under color of state law causes another person to be deprived of "any rights, privileges or immunities, secured by the Constitution, shall be liable to the party injured in an action at law." *See* 42 U.S.C. § 1983. To assert a § 1983 claim, a plaintiff must prove: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3)

by conduct of a "person" (4) acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Here, Lopez alleges GNLV and GNLV security and personnel were in violation of 42 U.S.C. § 1983 when they violated his constitutional rights. Lopez claims GNLV defendants violated his Fourth Amendment right when they beat, arrested, and detained him without justification. An excessive force claim brought under § 1983 requires that the reasonableness of a particular use of force be judged from the perspective of a reasonable officer on the scene. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Reasonableness under the Fourth Amendment is determined by a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.*

However, Lopez does not explain how GNLV defendants violated his First and Fourteenth Amendment rights. The First Amendment concerns the free exercise of religion, freedom of speech, freedom of the press, and the right to assemble and petition the government. *See* U.S. Const. amend. I. Lopez fails to allege facts concerning any of his First Amendment rights. The Fourteenth Amendment concerns the privileges and immunities of citizens of the United States, due process of law in respect to a person's life, liberty, or property and equal protection of the laws. *See* U.S. Const. amend. XIV. A plaintiff's § 1983 claim alleging a violation of the Equal Protection Clause of the Fourteenth Amendment must show the defendant acted with the intent to discriminate based upon the plaintiff's membership in a protected class. *See Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Here, Lopez fails to allege any facts concerning his membership in a protected class.

Private parties do not generally act under color of state law. *See Price v. State of Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). Under some circumstances, however, private parties can be liable under § 1983. Under the joint action test, a private party's actions amount to state actions by "proving the

5

existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *See Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1140 (9th Cir. 2012) (holding a casino's behavior qualified as state action because of cooperation with LVMPD through the SILA program). Joint action exists when the state "has so far insulated itself into a position of interdependence with the private party." *Id*. Lopez alleges GNLV defendants were acting under color of state law given their power to issue summons in lieu of arrests ("SILA"). (ECF No. 1-1 at 3). Lopez alleges LVMPD administered the "SILA" program to train GNLV defendants to assist the LVMPD in alleviating manpower concerns. *Id*. Lopez alleges that upon completion of the SILA program, GNLV defendants were empowered with the authority to arrest and initiate formal prosecution through the state's charging documents.

Lopez's allegations must be accepted as true. Accordingly, Lopez's factual allegations that GNLV defendants were acting under color of state law as joint actors with the LVMPD "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The Court finds that Lopez's complaint states a plausible claim for relief showing he is entitled to relief. Thus, this claim may proceed as a violation of the Fourth Amendment. However, the Court finds that Lopez failed to state a claim for violation of his First and Fourteenth Amendment under § 1983. Those claims will be dismissed with leave to amend. *See Cato*, 70 F.3d at 1106.

### 3. Claim 3

Lopez alleges GNLV conspired to interfere with his civil rights pursuant to 42 U.S.C. § 1985. Section 1985 concerns, *inter alia*, conspiring to deprive persons of rights or privileges. "To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property

damage or a deprivation of any right or privilege of a citizen of the United States." *See Gilliespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980), citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Griffin*, 403 U.S. at 102. "A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *See Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).

Lopez alleges that two or more defendant's conspired to intimidate him and injure him. As explained above, however, the Complaint does not allege facts supporting a claim that Defendants' actions were motivated by racial or other discriminatory animus. Nor does it demonstrate that Defendants were engaged in any kind of conspiracy based on that animus. The Complaint does not even state a claim that Defendants intentionally discriminated against Plaintiff on the basis of any protected class, which is an element of this separate claim. Therefore, this claim is dismissed with leave to amend.

### 4. Claim 4

Lopez alleges GNLV failed to prevent a conspiracy under 42 U.S.C. § 1986. Under § 1986, "every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured." 42 U.S.C. § 1986. Lopez alleges that defendants had knowledge of the conspiracy to harm him and had the power and opportunity to prevent the conspiracy and failed to do so which resulted in his injuries. However, because Lopez has not plausibly alleged a conspiracy under 42 U.S.C.

§ 1985 he cannot assert a claim under 42 U.S.C. § 1986.  Therefore, this claim is dismissed with leave to amend.

### 5.  Claim 5

Lopez asserts a claim under 42 U.S.C. § 1988.  Under § 1988(b), the Court may allow a prevailing party "reasonable attorney's fee as part of the cost" in action to enforce a provision of "sections 1981, 1981a, 1982, 1983, 1985 and 1986."  42 U.S.C. § 1988 (b).  Under § 1988 (c), the court may include expert fees as part of the attorney's fees.  42 U.S.C. § 1988 (c).  A plaintiff cannot assert a private cause of action under this statute as it is a statute concerning attorney's fees awarded to a prevailing party.  42 U.S.C. § 1988.  Therefore, this claim should be dismissed with prejudice.

### *Jurisdiction*

The U.S. District Court is a court of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  This court may exercise jurisdiction through Diversity Jurisdiction, Federal Question Jurisdiction, and Supplemental Jurisdiction.

*Diversity Jurisdiction*

The district courts have original jurisdiction in cases where the amount in controversy exceeds $75,000 and involves either

> (a) citizens of different states

> (b) citizens of a state and citizens of a foreign state

> (c) citizens of different states in which of foreign states are additional parties

> (d) a foreign state as plaintiff and citizens of a state or of different states

*See* 28 U.S.C. § 1332.

*Federal Question Jurisdiction*

The district courts have original jurisdiction over "all civil actions arising under the constitution, laws or treaties of the United States."  *See* 28 U.S.C. § 1331.

*Supplemental Jurisdiction*

The district courts may exercise Supplemental Jurisdiction over claims that are "so related" to claims within such original jurisdiction that they form part of the same case or controversy.  *See* 28 U.S.C. § 1367(a).  District courts may decide state law claims not within their subject matter jurisdiction if the federal and state law claims derive from a "common nucleus of operative fact."  *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1173-74 (9th Cir. 2002).

As currently pled, this Court may have Federal Question jurisdiction over claim two but not claims one, three, four, or five.  If this court exercises jurisdiction over claim two as plead then this court may exercise Supplemental Jurisdiction over state law claims six through fifteen.

### 6.  Claim 6

Lopez raises a defamation of character claim against GNLV defendants.  Defamation is a false written or oral statement that damages another's reputation.  Black's Law Dictionary (10th ed. 2014).  To assert a defamation of character claim in Nevada, the plaintiff must prove (1) a false and defamatory statement by a defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.  *See Pegasus v. Reno Newspapers, Inc.,* 118 Nev. 706, 718, 57 P.3d 82, 90 (2002); Restatement (Second) of Torts § 558 (1977).

Libel is "malicious defamation, expressed by printing, writing, signs, pictures or the like, tending to blacken the memory of the dead, or to impeach the honesty, integrity, virtue, or reputation, or to publish the natural defects of a living person or persons, or community of persons, or association of persons, and thereby to expose them to public hatred, contempt or ridicule."  Nev. Rev. Stat. § 200.510.

9

Slander is the publication of any defamatory matter otherwise than in libelous form.  Restatement (Second) of Torts § 575.

A publication is any method by which matter charged as libelous may be communicated to another shall be deemed a publication thereof.  Nev. Rev. Stat. § 200.520.  Lopez's complaint does not allege facts supporting a plausible claim that GNLV defendants made a false and defamatory statement and an unprivileged publication against him.  Lopez's complaint does not show that he is entitled to relief for defamation of character.  Therefore, this claim is dismissed with leave to amend.

### 7.  Claim 7

Lopez raises a false imprisonment claim against GNLV defendants.  To assert a false imprisonment claim in Nevada, the plaintiff must prove (1) defendant acted intending to confine plaintiff within boundaries fixed by defendant; (2) defendant's act directly resulted in such a confinement of plaintiff; and (3) plaintiff is conscious of the confinement or was harmed by it.  *Hernandez v. City of Reno*, 97 Nev. 429, 433, 634 P.2d 668, 671 (1981).  Lopez's complaint alleges GNLV intended to confine him, confined him and that he was aware of the confinement and harmed .  Lopez complaint raises a plausible false imprisonment claim and alleges facts showing he is entitled to relief.  Therefore, this claim should be allowed to proceed.

### 8.  Claim 8

Lopez raises assault and battery claims against GNLV defendants.  To assert an assault claim in Nevada, plaintiff must prove a person (1) unlawfully attempted to use physical force against another person; or (2) intentionally placed another person in reasonable apprehension of immediate bodily harm. *Newell v. State*, 131 Nev. Adv. Op. 97, 364 P.3d 602, 606 (2015), reh'g denied (Feb. 1, 2016); Nev. Rev. Stat. § 200.471 (1)(a).  To assert a battery claim, plaintiff must prove, (1) a willful and unlawful (2) use of force or violence upon the person of another.  *Rosas v. State*, 122 Nev. 1258, 1263, 147 P.3d 1101,

10

1105 (2006); Nev. Rev. Stat. § 200.481 (1)(a). Lopez's complaint alleges facts that GNLV defendants unlawfully attempted to use physical force against him. Lopez's complaint also alleges facts that GNLV defendants unlawfully and willfully used force or violence against him. Lopez's complaint raises plausible assault and battery claims for relief that show he is entitled to relief. Therefore, both the assault and battery claims should be allowed to proceed.

### 9. Claim 9

Lopez raises a conspiracy claim against GNLV defendants for conspiring to violate his civil rights. In Nevada, a civil conspiracy claim arises when two or more persons undertake a concerted action "with the intent to accomplish an unlawful objective for the purpose of harming another." *See Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. Adv. Op. 78, 335 P.3d 190, 198-99 (2014). A plaintiff must allege evidence of an explicit or tacit agreement between the alleged conspirators. *Id.* Although Lopez alleges that two or more GNLV defendants conspired to harm him he does not allege any evidence of an explicit or tacit agreement between the conspirators. Lopez complaint fails to state a plausible conspiracy claim for relief showing he is entitled to relief. Therefore, this claim is dismissed with leave to amend.

### 10. Claim 10

Lopez raises a failure to prevent conspiracy claim against GNLV defendants. Although failure to prevent conspiracy is a private cause of action under 42 U.S.C. § 1986, it is not a private cause of action under Nevada law. Therefore, this state supplemental claim should be dismissed with prejudice.

### 11. Claim 11

Lopez again raises a false imprisonment claim against GNLV defendants. See discussion under claim 7. Therefore, this claim is duplicative and should be dismissed with prejudice.

**12. Claim 12**

Lopez raises a coercion claim against GNLV defendants. In Nevada, coercion is when a person with the intent to compel another to do or abstain from doing an act which the other person has a right to do or abstain from doing, (1) uses violence or inflicts injury upon the other person or any of the other person's family, or upon the other person's property, or threatens such violence or injury; (2) deprives the person of any tool, implement or clothing, or hinders the person in the use thereof; or (3) attempts to intimidate the person by threats or force. *See Santana v. State*, 122 Nev. 1458, 1461, 148 P.3d 741, 743 (2006); Nev. Rev. Stat. § 207.190. Although Lopez alleges GNLV defendants inflicted injury upon him, he does not allege facts stating GNLV defendants deprived him of any tool, implement, or clothing. Lopez's complaint also does not allege facts to show that GNLV defendants made threats of force against him. Lopez fails to state a plausible coercion claim for relief and fails to show he is entitled to relief. Therefore, this claim is dismissed with leave to amend.

**13. Claim 13**

Lopez raises a premises liability claim against GNLV defendants. Premises liability is a liability theory under negligence. In Nevada, businesses owe its customers a duty to keep the premises in a reasonably safe condition for use. *See Sprague v. Lucky Stores, Inc.,* 109 Nev. 247, 250, 849 P.2d 320, 322-23 (1993). Lopez alleges GNLV defendants had a duty to operate the premises in a safe manner to ensure the welfare of all patrons on the premises. Lopez alleges GNLV knew of the risks of injury given a history of assaulting patrons on the premises and failed to eradicate these risks. Lopez also alleges that as a result he incurred injuries from the security guards beating, attacking, and pummeling him. Lopez's complaint alleges facts supporting a plausible premises liability claim for relief; therefore, this claim should be allowed to proceed.

### 14. Claim 14

Lopez raises a negligence claim against GNLV defendants.  To assert a negligence claim in Nevada, plaintiff must prove (1) defendant owed duty of care to plaintiff; (2) defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injuries; and (4) the plaintiff suffered damages. *See Scialabba v. Brandise Const. Co.*, 112 Nev. 965, 968 (1996).  Lopez alleges defendants owed him a duty of care as a customer and that GNLV defendants breached that duty when they beat, kicked, and pummeled him.  Lopez alleges GNLV defendants acts caused his physical injuries and that he suffered damages as a result.  Lopez's complaint alleges facts supporting a plausible negligence claim for relief; therefore, this claim should be allowed to proceed.

### 15. Claim 15

Lopez raises an intentional infliction of emotional distress ("IIED") claim against GNLV defendants.  To assert an IIED claim in Nevada, plaintiff must prove (1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation.  *See Miller v. Jones*, 114 Nev. 1291, 1299–300, 970 P.2d 571, 577 (1998).  Lopez alleges that GNLV defendant's conduct was extreme and that they intended to cause him emotional distress.  Lopez only states that he suffered severe emotional distress, but does not allege any facts to support this statement.  A claim must contain more than a "formulaic recitation of the elements."  *See Iqbal*, 556 U.S. at 681.  Therefore, this claim is dismissed with leave to amend.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Lopez's application to proceed *in forma pauperis* (ECF No. 1) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of the Court file the complaint.  (ECF No. 1-1).

13

IT IS FURTHER ORDERED that Lopez is permitted to maintain the action to its conclusion without the necessity of prepayment of any additional fees, costs, or security.  This order granting *in forma pauperis* status does not extend to the issuance of subpoenas at government expense.  If no amended complaint is timely filed this case will proceed on Claims 2 regarding the Fourth Amendment, 7, 8, 13 and 14.

IT IS FURTHER ORDERED that Lopez's claims 1, 2 for violation of the First and Fourteenth amendments, 3, 4, 6, 7,  9, 12, 13, 14 and 15 against GNLV defendants are DISMISSED with leave to amend.

IT IS FURTHER ORDERED that the amended complaint is due by Monday, August 28, 2017.  If Lopez fails to timely file an amended complaint that addresses the defects noted in this Order, the Court will recommend dismissal of those claims with prejudice.

IT IS FURTHER ORDERED that if an Amended Complaint is timely filed, the Clerk of the Court is directed **NOT** to issue summons on the Amended Complaint.  The court will issue a screening order on the Amended Complaint if filed and address the issuance of Summons at that time, if applicable.  *See* 28 U.S.C. § 1915(e)(2).

IT IS RECOMMENDED that Lopez's claims 5, 10 and 11 against GNLV defendants be DISMISSED with prejudice.

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1)

failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

Pursuant to Local Special Rule 2-2, the Plaintiff must immediately file written notification with the court of any change of address. The notification must include proof of service upon each opposing party or the party's attorney. **Failure to comply with this Rule may result in dismissal of the action.** *See* LSR 2-2.

IT IS SO ORDERED and RECOMMENDED.

DATED this 28th day of July 2017.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

15